UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-348-GWU

JAMES L. WOODS,                                                                PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

   impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

08-348  James L. Woods

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

08-348 James L. Woods

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

08-348  James L. Woods

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

6

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, James L. Woods, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic neck and low back pain secondary to a congenital fusion of C2-C3, C6-C7, and degenerative disc disease of the cervical and lumbar spine with disc bulges at L5-S1; a major depressive disorder, "rule out" substance-induced mood disorder; polysubstance dependency (cocaine, benzodiazepines, opiates, and alcohol) in short-term remission by history; a pain disorder; a history of alcohol-induced pancreatitis; right carpal tunnel syndrome; a history of a ventral septal defect; a congenital absence of the right kidney; and continued nicotine abuse. (Tr. 13-14). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Woods retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 14-20).

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to no more than "light" level exertion, with the option of sitting or standing and no prolonged standing or walking in excess of 45 minutes without interruption,

and also had the following non-exertional limitations.  He: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs; (3) could not work with his hands overhead or perform jobs requiring frequent turning of the head; (4) could occasionally push, pull, reach, handle, and finger with his right, dominant hand; (5) could not work around industrial hazards or vibration; and (6) would require entry level work with no frequent changes in work routine, no requirement for detailed or complex problem solving, independent planning, or the setting of goals.  (Tr. 68).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 69).

On appeal, this court must determine whether the hypothetical question is supported by substantial evidence, and that it fairly depicts the plaintiff's condition.

Mr. Woods alleged disability due to spinal herniations which prevented him from standing, sitting, and lying down for extended periods of time, that caused numbness in his arms with fine movements, and that caused pain and numbness in his legs.  (Tr. 130).  He testified that he had been unable to continue his job as a cardiac catheterization technologist after July 7, 2005.  (Tr. 35).  He had tried to return to work briefly, but could not stand long enough to keep a job as a cashier. (Tr. 41).  His neck problems caused muscle spasms in his shoulders and his right arm would go numb and "lock up."  (Tr. 49).  He reported having carpal tunnel

08-348  James L. Woods

surgery on both hands in 1996 and 1997, and was dropping objects again, but was not sure if it was due to his neck problem or carpal tunnel returning.  (Tr. 51).  He could only walk 25 to 30 yards without right hip and leg pain and sometimes used a cane.  (Tr. 50-1).  He could only sit for 10 to 20 minutes.  (Tr. 51).  He testified that at the time of the hearing he did nothing during the day except watch TV.  (Tr. 52).  He even had difficulty brushing his teeth and shaving due to spasms.  (Tr. 49).  He was able to get a few things at the grocery, but had a hard time carrying a gallon of milk from his car into the house, and his mother would get most of the things he needed.  (Tr. 51, 56).  The plaintiff's mother also testified that her son was having difficulty with personal care and she had to help with his chores.  (Tr. 59, 64).

The plaintiff admitted having had a drinking problem, which had caused him to be hospitalized on several occasions for pancreatitis between April, 2005 and February, 2006.  (Tr. 37-8).  He claimed to be abstinent as of the May, 2007 hearing except for prescribed medications.  (Tr. 38).  He had gotten cocaine from his ex-wife at one point, but testified that he had prescriptions for benzodiazepines and opiates.  (Tr. 36).  He was attending Alcoholics Anonymous and felt that he was not as depressed on the medication Effexor.  (Tr. 45-6).  The plaintiff's mother asserted that he was using drugs and alcohol to deal with his physical pain and that he had "mostly" been sober since February, 2006.  (Tr. 61-2).

Medical evidence in the transcript includes MRIs of the cervical spine, all of them showing narrowing and disc protrusions at several levels. (Tr. 193-4, 343). Mr. Woods underwent evaluations by Dr. Mark Coggins, an orthopedic surgeon, in 2004 and 2005. His first examination showed tenderness and a decrease in the range of motion but intact sensation and reflexes. (Tr. 236). Based on the MRI reports and x-rays, Dr. Coggins diagnosed cervical spondylosis with stenosis and congenital C2-C3 and C6-C7 fusions. (Tr. 237). He felt that the plaintiff was a complex case, and fusion surgery might ultimately be needed, but he was hesitant to perform this, apparently because so many levels would need to be fused. (Id.). He considered less drastic surgery, but decided to recommend pain medication and a series of epidural injections. (Id.). The epidural injections did not help, and a TENS unit was tried, but provided no permanent relief. (Tr. 234-5). As of March, 2005, Mr. Woods remained symptomatic, but Dr. Coggins noted that "he is not eager to have a fusion at this point" and noted that "[w]e cannot do foraminotomies bilaterally and perform a laminaplasty." (Tr. 234).

In addition to the plaintiff's cervical problems, an MRI of the plaintiff's lumbosacral spine on August 17, 2005 showed severe bilateral L5-S1 narrowing secondary to a disc protrusion, end plate spurring, facet arthropathy, and decreased height of the disc. (Tr. 343). There were broad disc bulges/protrusions throughout the lumbar spine, but no spinal canal stenosis. (Id.).

The plaintiff's treating family physician, Dr. W. Clark Bailey, wrote a letter dated August 8, 2005 telling Mr. Woods that the opinion of a neurosurgeon should be obtained regarding the lumbosacral findings, which "would be the source of severe pain that could be disabling even if it weren't for your neck." (Tr. 265). He added that the MRI scans of the neck and back "prove that there is a valid reason for your complaints." (Id.). On December 4, 2005, Dr. Bailey wrote another letter, telling the plaintiff that he would never be able to do anything "strenuous," including his past relevant work, and did not think he could do "even non-strenuous duties that would involve sitting, computer work, or any degree of effort." (Tr. 263). On February 15, 2006, the physician wrote a letter asserting that the plaintiff was "totally and completely and permanently disable[d] from any job that involves any degree of physical activity." (Tr. 261). Due to his "rather complex and potentially dire" spinal situation, there was a "possibility of substantial injury from subluxation." He noted that Dr. Coggins had had reservations about surgery. He added that his disability was based on cervical and lumbar disease and his problems with pancreatitis did "not currently apply." (Tr. 262).

Dr. Bailey completed functional capacity assessments dated July 15, 2005 and February 28, 2007. In both, he limited the plaintiff to lifting no more than 10 pounds occasionally as well as having restrictions on standing, walking, and sitting

that would preclude full-time work.  The more recent assessment also severely limited handling and fingering.  (Tr. 272-4, 382-5).

Dr. Sara Salles, an osteopath, conducted a consultative examination of the plaintiff on referral from the state Department for Disability Determination on May 2, 2006.  (Tr. 311).  She reviewed the August, 2005 MRI of the lumbosacral spine, and the March, 2000 cervical spine MRI.  (Tr. 312-13).  Her examination showed full strength in the upper and lower extremities, and decreased sensation in the right median nerve distribution and of the bilateral L5 distribution.  (Tr. 313).  There was reduced range of motion in the shoulders, cervical spine, and lumbosacral spine, but the elbows, fingers, wrists, and thumbs were within normal limits.  (Tr. 313, 315-15).  There was pain on palpation of the shoulders, cervical spine, and lumbosacral spine and evidence of mild spasm.  (Tr. 313).  Mr. Woods was able to heel and toe walk without using his cane, and could do a squat, but needed to push up to stand. Dr. Salles diagnosed a history of chronic neck and low back pain, cervical and lumbar degenerative disc and joint disease, lumbar neuroforaminal stenosis, and a cervical fusion which appeared to be congenital.  (Tr. 314).  She concluded that Mr. Woods should avoid lifting any objects greater than 10 pounds, was not to kneel, bend, stoop, or crawl, could stand for a "very limited time" with a change of position and was able to sit, again with frequent changes of position.  (Id.).

08-348  James L. Woods

Therefore, the only two examining physicians to give an opinion limited the plaintiff to a greater extent than found by the ALJ.  Two state agency reviewing physicians, Dr. Amanda Lange and Dr. David Swan, reviewed the evidence in May and in October, 2006, respectively, and concluded that Mr. Woods was capable of "light" level exertion, with non-exertional restrictions generally consistent with the ALJ's findings.  (Tr. 346-53, 357-64).  Dr. Lange reviewed the report of Dr. Salles and stated that her conclusions were given no weight because the objective evidence did not support such a level of limitation.  (Tr. 352).  However, there is no indication that either reviewer saw the limitations given by the treating physician, and they gave no rationale for failing to credit Dr. Bailey.[1]

The ALJ stated that he rejected Dr. Bailey's opinions and assessments because they ignored the plaintiff's alcoholism and drug abuse, "and flatly overstate the medical evidence."  (Tr. 18).  He also noted that the plaintiff had also apparently worked with Dr. Bailey.  (Id.).  The plaintiff assigns this rationale as inadequate, and the court agrees.

The medical evidence is full of proof that the plaintiff had a serious problem with alcoholism, and he was hospitalized for pancreatitis or other problems after going on drinking binges in April, 2005, twice in October, 2005, and in February,

---

[1] Social Security Ruling 96-6p provides that the opinion of a state agency medical consultant "may be entitled to greater weight than a treating source's medical opinion if [it] is based on a review of the complete case record . . . ."

2006.  (Tr. 240-1, 247-9, 257-8, 278-80).  Dr. Bailey was the attending physician on all these occasions.  The plaintiff was not alleging disability due to alcoholism or even pancreatitis, however, and, as previously noted, Dr. Bailey appeared to state that his pancreatitis was not an issue in his disability.  There were numerous objective studies including MRIs, CTs, and x-rays showing the existence of cervical and lumbar disc disease, and a treating orthopedic surgeon even commented that the plaintiff's neck probably needed surgery or would in the future, but it was a very complex situation.  It is simply not clear how the plaintiff's alcohol and drug use, however unappealing it is, would have affected his spinal condition one way or the other.  The ALJ was correct in saying that drugs and alcohol played a role in his medical history, but it did not cause a congenital fusion of the cervical vertebrae or the other changes in the lumbar and cervical spine.  Otherwise, the only reason given by the ALJ for discounting the treating source was that there is some indication that the physician and the plaintiff worked together at one time.

The opinion of Dr. Salles was rejected by the ALJ because he felt that it was premised on the plaintiff's subjective complaints.  (Tr. 18).  As previously noted, however, Dr. Salles had some objective studies to review, including the very recent lumbosacral MRI.[2]

---

[2]The ALJ also noted an "impairment rating" prepared for a Workers Compensation carrier in March, 2004 by Dr. Donald Douglas, at which time the plaintiff was still working.  Dr. Douglas reviewed evidence primarily of treatment for lower back

14

In view of the large amount of objective evidence of potentially serious lumbar and spinal problems which were found by both a treating source and a consultative examiner to be more limiting than the ALJ, a remand will be required for further consideration.

The plaintiff also raises several other issues on appeal.  He points out that the VE specified only two jobs in her testimony which the hypothetical individual can perform.  One of them was called a "general office clerk or . . . routing clerk or a sorter, file clerk, mail clerk" type of job while the other was called "interview information appointment clerk." The ALJ cited Dictionary of Occupational Titles (DOT) §§ 209.562-010 and 237-367-018 as being representative of these positions. (Tr. 69).  The DOT states that both of these jobs require frequent reaching, which would be inconsistent with the hypothetical question.  The court notes that the Sixth Circuit has recently ruled that an ALJ is only required by Social Security Ruling (SSR) 00-4p to ask a VE about conflicts between his testimony and the information provided by the DOT, but has no duty to interrogate him further.  Lindsley v. Commissioner of Social Security, 560 F.3d 601, 606 (6th Cir. 2009).  Therefore,

---

pain in 2003 and conducted a physical examination resulting only in a 4 percent impairment rating.  (Tr. 209-11).  While it is not supportive of the restrictions found by the other examiners, Dr. Douglas's report was completed over a year before the alleged onset date, and did not really discuss his neck problems.

15

there was no error.  Since the plaintiff is aware of the issue now, he may wish to interrogate the VE about it on remand, however.

The plaintiff's other main contention is that the case was unfairly decided due to ALJ bias.  The plaintiff objects, for example, to the ALJ challenging the plaintiff's statement that he could not afford $153.00 a month for medication by asking how he could smoke one and a half to two packs of cigarettes per day.  (Tr. 45).  However, the ALJ reasonably calculated the monthly cost of this cigarette habit as $150.00 to $180.00, which would have been enough to pay for the prescription.  (Id.).  The Sixth Circuit has recognized that a plaintiff's allegation that he is unable to afford medication is not particularly credible if he is spending an equivalent amount of money on cigarettes.  <u>Sias v. Secretary of Health and Human Services</u>, 861 F.2d 475, 480 (6th Cir. 1988).  Nor does the court see any impropriety in the ALJ's questioning regarding the plaintiff's substance abuse, which the evidence shows was a protracted, serious problem.  The ALJ was blunt at times, but he is not required to be polite, and it is noteworthy that an examining psychologist found Mr. Woods tended to be slightly evasive in an effort to present himself in a good light.  (Tr. 288).  Under the circumstances, the court finds no evidence of any reversible error.

Finally, the opinion of the examining psychologist, Nancy Scott, which concluded that the plaintiff had a good ability in most areas except for a poor ability

08-348  James L. Woods

to adapt to the stress and pressures of a 40 hour week (Tr. 294) was reasonably discounted by a reviewing psychologist, Jane Brake, as being based on the combined effects of physical and mental impairments (Tr. 308).  The ALJ reasonably concluded that this opinion was outside the psychologist's area of expertise.  In view of the fact that state agency reviewers found no more than mild functional limitations (Tr. 306, 376), the ALJ's choice of mental restrictions is supported by substantial evidence.

The decision will be remanded for further consideration.

This the 15th day of July, 2009.

Signed By:

G. Wix Unthank

United States Senior Judge